# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GABRIEL GRIFFIN,<br><br>      Plaintiff,<br><br>v.<br><br>LAURIE BONDAR, CATHY COULSON, DENISE TUTTLE, and MATTHEW J. TORBENSON,<br><br>      Defendants. | Case No. 20-CV-380-JPS<br><br><br>**ORDER** |

  Plaintiff, a prisoner proceeding *pro se*, filed a complaint on March 9, 2020 alleging violations of his constitutional rights when his term of extended supervision was revoked in Wisconsin state court proceedings. (Docket #1). On June 30, 2020, the Court screened the complaint pursuant to 28 U.S.C. § 1915A and dismissed this action on the grounds that Plaintiff had failed to state a claim. (Docket #8). On July 10, 2020, Plaintiff filed a letter captioned "Error In Judgment," which the Court now addresses as a motion for reconsideration under Federal Rule of Civil Procedure 59(e). (Docket #10). As such, the motion must be denied.

  Rule 59(e) permits a party to ask for alteration or amendment of a judgment within twenty-eight days of the judgment's issuance. Fed. R. Civ. P. 59(e). Plaintiff's motion was timely filed, and so the Court may consider its merits. Nevertheless, the standard that Plaintiff must meet to have his motion granted is steep. A Rule 59(e) motion may be granted only where the movant clearly establishes: "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry

of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Barrington Music Prods., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019); *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) ("District courts need not grant Rule 59(e) motions to advance arguments or theories that could and should have been made *before* the district court rendered a judgment.") (emphasis added) (internal quotation omitted).

In 2011, Plaintiff was convicted by a jury in state court of two misdemeanors—criminal trespass to a dwelling and disorderly conduct. On October 19, 2011, the trial judge imposed a bifurcated sentence, which consisted of one-year incarceration and one-year extended supervision for each offense, to operate consecutively. *State of Wisconsin v. Gabriel Nmm Griffin*, 2011CF1746 (Milwaukee Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov (last visited Feb. 11, 2021). Plaintiff appealed, and the Wisconsin Court of Appeals remanded Plaintiff's case for resentencing consistent with its interpretation of the bifurcation statute as it applied to misdemeanors. *State v. Griffin*, 2013 WL 3884146, at *6–8 (Wis. Ct. App. July 30, 2013) (determining that a lower sentence would apply). However, the Court of Appeals did not vacate the original sentence. *Id.* The case was unpublished and was one of several inconsistent decisions addressing this issue. Plaintiff appealed the Court of Appeals' decision, and the Wisconsin Supreme Court denied review. *State v. Griffin*, 842 N.W.2d 262 (Table) (Wis. Dec. 16, 2013).

On February 26, 2014, the Wisconsin Court of Appeals published an opinion that made clear its position on bifurcated sentences for misdemeanors. *State v. Lasanske*, 844 N.W.2d 417, 418 (Wis. Ct. App. 2014) (three-judge decision which clarified law on the issue of bifurcated sentences for misdemeanors with penalty enhancements). In the end,

*Lasanske* upheld the method by which Plaintiff was originally sentenced. Accordingly, when Plaintiff appeared for resentencing on July 19, 2014, the trial court re-instated his original sentence. It is unclear from the state court docket whether Plaintiff appealed the trial court's resentencing decision. *See State of Wisconsin v. Gabriel Nmm Griffin*, 2011CF1746 (Milwaukee Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov (last visited Feb. 11, 2021) (noting postconviction discovery motions and appeals, but not explaining the substance of either). It is clear, however, that Plaintiff's appeals and petitions for review to the Wisconsin Supreme Court—filed after his resentencing—have all been denied. *Id.* Additionally, Plaintiff has filed multiple habeas petitions challenging the sentence in federal court. *See Gabriel Griffin v. Timothy Douma*, 13-CV-616-WEC (Docket #17) (dismissed without prejudice for procedural default); *Gabriel Griffin v. Michael Hafemann*, 15-CV-323-WCG (Docket #7) (dismissed for failure to state a claim); *Gabriel Griffin v. Sheriff Eric Severson*, 17-CV-697-JPS, 17-CV-870-JPS (Docket #5) (dismissed for failure to obtain permission from court of appeals for successive habeas petition). Based on this information, it is also clear that Plaintiff's sentence in 2011CF1746 was never overturned.

In November 2015, Plaintiff faced revocation of his term of extended supervision, which he remained subject to in accordance with the terms of his original sentence. Plaintiff argued that the Wisconsin Division of Hearings and Appeals lacked authority to revoke his term of extended supervision because Plaintiff had never been re-sentenced pursuant to the Court of Appeals' July 30, 2013 mandate. (Docket #1-8 at 2). The administrate law judge ("ALJ") dismissed this concern by noting that it "lack[ed] the authority to void a facially valid order of the circuit court,"

and, therefore, was "unable to address the merits of the jurisdictional argument." (*Id.*)

At issue in Plaintiff's motion for reconsideration are the claims made against two parole agents, Laurie Bondar ("Bondar") and Denise Tuttle ("Tuttle"). In his complaint, Plaintiff claims that, in 2015, Bondar improperly revoked his parole after his term of extended supervision had expired, in violation of his due process rights. (Docket #1 at 2). Similarly, he claims that Tuttle improperly ignored his request to recalculate his sentence, which resulted in his continued imprisonment "beyond the date when plaintiff was entitled to be released" in violation of his due process rights, among others. (*Id.* at 10–11). Both of Plaintiff's claims against the parole agents are based on his being incarcerated beyond what his sentence allowed.

The Court, in its screening order, found that the actions of Bondar and Tuttle entitled them to absolute immunity. (Docket #8 at 5–6). The Court dismissed the case for failure to state a claim accordingly. Plaintiff now raises an issue with the level of immunity granted to the parole agents in this case. (Docket #10 at 1–3). He argues that the parole agents are only entitled to qualified immunity under *Dawson v. Newman*, 419 F.3d 656 (7th Cir. 2005) and *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir. 1996), and therefore the Court erred in dismissing his case. (*Id.* at 3; #10-1). Plaintiff's reliance on *Dawson* and *Wilson* is misplaced, as *Dawson* is readily distinguished and *Wilson* supports the conclusion that Plaintiff has no claim.

In *Dawson*, the state filed an amended notice of probation violation against plaintiff, ten years after plaintiff was placed on three-years' probation and eight years after an alleged probation violation. *Dawson*, 419 F.3d at 658. The circuit court revoked plaintiff's probation and imposed a

six-year term of incarceration. *Id.* Plaintiff appealed, and the Indiana Court of Appeals held that plaintiff's "probation revocation was improper as it occurred long after the term of probation had expired." *Id.* at 658–59. The case was remanded to the circuit court and the judge immediately entered an order mandating that plaintiff be released. *Id.* at 659. Unfortunately, the release order was never transmitted, and the plaintiff had no idea he was supposed to be released. *Id.* The plaintiff was improperly kept in custody for another 14 months. *Id.* When he was released, he was ordered to report for parole supervision. *Id.* By then, the plaintiff had learned about the Indiana Court of Appeals' decision and the order mandating his release over a year earlier. *Id.* Parole officers ignored the plaintiff's protests that his placement on supervision was improper due to these decisions. *Id.* The Seventh Circuit stated that parole officers can be entitled to absolute immunity "'for their activities that are analogous to those performed by judges,'" such as "decision[s] to grant, revoke, or deny parole, or the signing of an arrest warrant." *Id.* at 662 (quoting *Wilson*, 86 F.3d at 1444). However, the Seventh Circuit held that the parole officers in *Dawson* were not engaged in acts that are analogous to those by judges. *Id.* Instead, the parole officers were engaged in the ordinary duties in supervision of a parolee, and therefore, not entitled to absolute immunity in the case. *Id.*

In *Wilson*, the plaintiff refused to sign an agreement required by the parole officer. *Wilson*, 86 F.3d at 1440. The parole officer presented the plaintiff with the notice of charges recommending that the plaintiff's supervised release be revoked on the ground that he failed to sign the agreement. *Id.* After a revocation hearing, the plaintiff's supervised release was revoked and he was required to remain in prison until the end of his full sentence. *Id.* at 1441. When the plaintiff challenged this decision, the

parties disputed the level of immunity to which the probation officer was entitled. *Id.* at 1445–46. In response, the Seventh Circuit stated that, "prior to reaching the issue of qualified immunity, we must first determine whether [plaintiff] proved a viable constitutional violation." *Id.* at 1446. The Seventh Circuit held that the plaintiff's failure to sign the agreement is what caused the revocation of his supervised release—not any unconstitutional conduct by the parole officer. *Id.* at 1447. Thus, without an underlying constitutional violation, the plaintiff could not state a claim against the parole officer. *See id.*

The core facts in this case are distinguishable from *Dawson* and similar to *Wilson*. In contrast to *Dawson*, Plaintiff's additional incarceration was not improper or beyond what his sentence allowed. Instead, Plaintiff was properly held in custody when his supervised release was revoked for a period of time consistent with his sentence. In *Dawson*, the plaintiff was subjected to a constitutional violation when he was kept in custody improperly. However, Plaintiff's situation is similar to *Wilson*. Like the plaintiff in *Wilson*, Plaintiff never suffered a constitutional violation, because he was never improperly incarcerated. Thus, based on *Dawson* and *Wilson*, Plaintiff has failed to state a claim for a constitutional violation against Bondar and Tuttle, and his claims against them were properly dismissed.[1]

It may be true that the parole agents in this case are only entitled to qualified immunity for their actions. However, the Court need not dive into the immunity issue because Plaintiff did not suffer a constitutional

---

[1] The screening order dismissed the case for failure to state a claim based on immunity for the parole officers. Although the analysis is different, the outcome is the same.

violation. *See Wilson*, 86 F.3d at 1446. Plaintiff's claims are predicated on the assumed fact that his sentence was invalid and should have been shorter in accordance with the Court of Appeals' decision. However, Plaintiff was resentenced in 2014, and in accordance with *Lasanske*, he was resentenced to the same terms as his original sentence. Plaintiff's 2014 resentence was never overturned or modified. Plaintiff was provided an opportunity to go before an ALJ for a revocation hearing. The ALJ—not the parole agents—made the decision regarding revocation and Plaintiff's continued incarceration. No constitutional violation transpired when Plaintiff's supervised release was revoked, as he was not held longer than his sentence allowed. Because Plaintiff remained subject to the terms of his original sentence, the actions by Bondar and Tuttle regarding revocation were proper and constitutional. Plaintiff has failed to state a claim against Bondar and Tuttle or any of the other Defendants in this case. Thus, the Court properly dismissed the case for failure to state a claim.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to alter or amend the Court's judgment (Docket #10) be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 12th day of February, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge